MᶜERLAIN, TRUSTEE *v.* TAYLOR.

[No. 25,809.   Filed October 12, 1934.]

*Shively, Gilmer & Arnold,* for appellant.

*Jackson & Jackson,* for appellee.

FANSLER, J.—John C. Rummel & Son made an assignment to E. J. McErlain, as trustee for the benefit of their creditors. Appellee was an employee and creditor for his services as a "manual and mechanical laborer." He filed a claim under §3 of the Acts of 1885, p. 36, §9342, Burns 1926, §40-110, Burns 1933, which provides for a preference against other creditors in favor of "manual or mechanical laborers" for the full amount due. Other employees of the assignors filed claims, claiming a preference in their favor as employees to the extent of $50.00, under the Act of 1879, p. 153, as amended by the Acts of 1885, p. 95 and Acts of 1917, p. 339, §9343, Burns 1926, §40-111, Burns 1933, §10001, Baldwin's 1934.

Appellant took the position that the Act of 1885, §9342, Burns 1926, is unconstitutional, and allowed appellee's claim only to the extent of $50.00, as provided by the Act of 1879. Appellee filed his complaint asking for a declaratory judgment, declaring his rights in the premises, and that the act in question is constitutional. Appellant answered that he had paid $50.00 of appellee's claim of $190.00, and that the Act of 1885 is unconstitutional, and in violation of §1 of the Fourteenth Amendment to the Constitution of the United States, and of §23 of Art. 1 of the Constitution of Indiana, in that it grants special privileges and immunities, which upon the same terms are not granted to all citizens.

There was a finding and judgment for plaintiff that the statute in question is constitutional, and upon this appeal, as in the case below, the only question presented or involved is the constitutionality of §9342, Burns 1926.

It is said in the briefs that if appellee and those in

like circumstances are preferred in full, it will be in part at the expense of other wage-earning employees who will receive a smaller part of the amounts due, and, therefore, if the statute is constitutional, it in fact creates a preference in favor of "manual and mechanical laborers" as against all other types of wage-earning employees. The question is, Can such a preference be sustained under the Constitution?

It is well settled that the constitutional provisions involved do not forbid a classification of persons for legislative purposes.

"But in such cases the classification must not be capricious or arbitrary, but must be just and reasonable, and based upon substantial distinctions germane to the subject matter and the object to be obtained. The distinctions must involve something more than mere characteristics which will serve to divide or identify the class. There must be inherent differences in situation related to the subject-matter of the legislation which require, necessitate or make expedient different or exclusive legislation with respect to the members of the class. The classification must embrace all who possess the attributes or characteristics which are the basis of the classification, and their difference from those excluded must be substantial and related to the purpose of the legislation." *Henry Heckler* v. *Herman L. Conter, Treas., et al.* (1933), 206 Ind. 376, 381, 187 N. E. 878.

Statutes providing for liens for the protection of those whose earnings are the result of their labor, have been generally recognized as constitutional, but whether a statute providing a benefit for one class of wage-earners at the expense of other classes of wage-earners can be sustained, is another question which presents new difficulties. The question is admittedly a new one in this state, and if it has been passed on elsewhere, the fact has not been called to our attention.

Appellee argues: "We believe that such a classifica-

tion was, and still is, based upon sound public policy. 'Manual and mechanical' laborers as a class are unquestionably more ignorant than are salesmen, foremen, bookkeepers, clerks and other similar employees, and are less able to protect themselves if their employer becomes insolvent, or even to know when their employer is in failing circumstances. This condition was even more manifest in 1885 (when the act was passed) than it is today." And again: "Laboring conditions during the year 1885 must be taken into consideration rather than present day wage rates. The court knows as a matter of history that at the time this statute was passed the prevailing wage of the ordinary factory workman in Indiana was eleven and twelve cents per hour, while clerks, bookkeepers, and stenographers were receiving two and three times that amount. . . . If the statute was constitutional when passed, it must remain in full force and effect until changed or repealed by the legislature."

But the class is not limited to factory workers, and it cannot be definitely said that at any period of our history manual and mechanical laborers as a class received smaller compensation than any other class of wage-earners. The characteristics of the class as a whole must be looked to in determining the validity of the classification. Inequalities as to some persons embraced within the general class are unavoidable; some laborers may have independent means and not be dependent upon their wage for their sustenance, and thus the basic reason for the protection of the class would fail as to them. Nevertheless, their inclusion does not invalidate the classification; and, on the other hand, there might be individuals outside the classification as badly in need of protective legislation as any member of the protected class, yet this would not defeat the classification. But if there

are other general classes situate in all respects like the class benefited by the statute, with the same inherent needs and qualities which indicate the necessity or expediency of protection for the favored class, and legislation discriminates against, casts a burden upon, or withholds the same protection from the other class or classes in like situation, it cannot stand.

Appellee seeks to arbitrarily classify all wage-earners as "manual and mechanical" laborers or "brain" workers, but wage-earners may not be arbitrarily separated on such a basis. Webster defines "mechanic" as synonymous with "artisan," and, again as "pertaining to manual labor;" and "manual" as "of or pertaining to the hand or hands; done, made, or operated, by, or used with, the hand or hands; as, manual labor."

"Manual and mechanical laborers" are generally considered to be those who work with their hands, with or without the aid of mechanical contrivances, tools, or machines; and, yet, it is well understood that in all pursuits some physical effort is expended, and that those who would unquestionably come within the definition of "manual and mechanical" laborers exercise more or less mental effort. Some types of skilled mechanic require high mental training and an understanding of at least some of the arts and sciences, and many cases might be suggested in which a skilled mechanic supervising the operation of an automatic machine gives but a negligible amount of physical, and a considerable amount of mental, effort to his employment. The effort to draw a sharp line of demarcation between those who may be described as "manual and mechanical" laborers, and laborers and wage-earning employees who do not come within that classification, presents many difficulties. But we need not pursue the effort of the extent of allocating every conceivable employment to one group or the other.

It is sufficient for our purpose that a large and important group of workers and wage-earning employees cannot reasonably and logically be considered as coming within the term "manual and mechanical" laborers as used in the statute.

Neither can the amount of compensation be controlling. We cannot fail to recognize that in 1885 and now "manual and mechanical" laborers are not upon a common basis, but that those more skilled received higher compensation, and that a large percentage receive much higher compensation than is received by at least a considerable percentage of wage-earners who do not come within the classification.

Nor can we agree with appellee that " 'manual and mechanical' laborers as a class are unquestionably more ignorant" than other wage-earners, or "less able to protect themselves if their employer becomes insolvent." Low-waged sales clerks in commercial establishments, filing and copy clerks in offices, collectors, and numerous other nondescript employees, dependent upon daily or weekly wages for the sustenance of themselves and families, are not only required to work as exhaustingly for no better pay, but are no more intelligent, or able to protect themselves in case of insolvency of their employer, than the average "manual or mechanical laborer."

What is there, then, inherent in the group, which by common understanding comes within the definition "manual and mechanical" laborer, which singles it out and distinguishes it for such preferment and protection as a matter of public policy as against those other wage-earners receiving no more, and some times less compensation, and who have no better equipment or means for protecting themselves in case of their employer's insolvency? We find nothing. The classification, therefore, does not come within the constitu-

246

tional requirement, and the statute is unconstitutional.

Judgment reversed, with instructions to enter a declaratory judgment for appellant consistent with this opinion.