Edward Ray BELL, a minor, by Allie Mae Henderson as next friend, Appellant,

v.

The LONE OAK INDEPENDENT SCHOOL DISTRICT et al., Appellee.

No. 8208.

Court of Civil Appeals of Texas, Texarkana.

Feb. 26, 1974.

Rehearing Denied March 26, 1974.

**637**

Smith E. Gilley, Greenville, Jack G. Kennedy, Kennedy & Minshew, Sherman, for appellant.

Robert P. Woodruff, Woodruff & Smith, Dallas, G. C. Harris, Greenville, for appellee.

RAY, Justice.

This is a suit to enjoin the enforcement of a school regulation that prohibits married students from participating in extra-curricular activities. Edward Ray Bell, appellant (petitioner), brought suit against the Lone Oak Independent School District and the Board of Trustees of Lone Oak Independent School District, appellees (respondents), seeking a temporary restraining order and injunction against the school and its Board of Trustees to prevent the enforcement of the "married-student rule" so that Bell could play on the local football team. A hearing was held by the trial court and it denied the temporary injunction. Appellant filed his appeal to this court and also filed his application here for a temporary restraining order and temporary injunction to prevent his cause from becoming moot and to preserve the jurisdiction of this court. We granted the temporary restraining order and, after hearing, granted the temporary injunction pending the final disposition of the case.

Appellant Bell submits five points of error for our consideration. Appellant contends that the temporary injunction should have been granted by the trial court because the school regulation concerning married students sets up an arbitrary and unreasonable classification that is invalid under 42 U.S.C.A. Sec. 1983, and the Fourteenth Amendment to the U.S. Constitution; that the school regulation was applied in an arbitrary manner; that the regulation infringes upon the right to marry; that the trial court should have applied federal statutes and decisions in making its decision, rather than applying state statutes and decisions; that appellant was denied the right to participate in school activities paid for out of school funds provided under Art. 2902, Tex.Rev.Civ.Statutes.

The Board of Trustees has the following general powers as set out in Sec. 23.26 of the Texas Education Code, V.T.C.A.:

"(b) The trustees shall have the exclusive power to manage and govern the public free schools of the district.

\*    \*    \*    \*    \*    \*

"(d) The trustees may adopt such rules, regulations, and by-laws as they may deem proper."

Basically, we feel that local school officials are in the best position to manage the affairs of the local school district and the local schools. "The quicker judges get out of the business of running schools the better." Passel v. Fort Worth Independent School District, 453 S.W.2d 888 (Tex.Civ. App. Fort Worth 1970, writ ref'd, n. r. e.); Texarkana Independent School District v. Lewis, 470 S.W.2d 727, 734 (Tex.Civ.App. Texarkana 1971, no writ).

A portion of the rule here questioned is as follows:

"The married student cannot be elected to an office, or if already elected, must resign; cannot be appointed to an office; cannot participate in athletics, pep squad, class plays, social events such as junior-senior banquet, football banquet, etc; must take a full schedule and participate in classroom activities without undue absences."

The quoted rule of the Lone Oak Independent School District sets up a classification of individuals to be treated differently from the remainder of the school students without being designed to promote a compelling state interest. As such, the rule violates 42 U.S.C.A., Sec. 1983, and the Fourteenth Amendment to the United States Constitution. There can be no doubt in anyone's mind that if the same rule provided that a particular race or color of person would be ineligible to play football, the state courts and federal courts would promptly strike the rule down as being discriminatory towards a class of individuals. The same logic applies to married students' participation in extra-curricular activities. Appellees have not shown a clear and present danger to the other students' physical or emotional safety and well-being, or any other danger to the students, faculty, or school property, nor any substantial or material danger to the operation of the public schools by allowing married students to participate in athletics. The burden of proof is upon the school district to show that its rule should be upheld as a necessary restraint to promote a compelling state interest.

It is the public policy of this state to encourage marriage rather than living together unmarried. To promote that public policy, we have sanctioned by statute the marriage ceremony (Secs. 1.81 et seq., Texas Family Code) and through the years have jealously guarded the bonds of matrimony. It therefore seems illogical to say that a school district can make a rule punishing a student for entering into a status authorized and sanctioned by the laws of this state. We find no logical basis for such rule. We are not unmindful of the decision in Kissick v. Garland Independent School District, 330 S.W.2d 708 (Tex.Civ. App.Dallas 1959, writ ref'd, n. r. e.), involving a situation very similar to the one in this case. There the court held that it was not arbitrary, capricious, discriminatory or unreasonable to bar married students from participating in athletics or other extracurricular activities. Our holding in this case is in direct opposition to *Kissick,* supra.

It may be that an education is not a guaranteed right under our Federal Constitution. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). It may further be that a school cannot constitutionally be required to provide a student with an athletic program, but if the state and the local school provide free public education and an athletic program, it must do so in a manner not calculated to discriminate against a class of individuals who will be treated differently from the remainder of the students, unless the school district can show that such rule is a necessary restraint to promote a compelling state interest. In the present case, the evidence is legally insufficient to establish that the rule in question is a necessary restraint to promote a compelling state interest, that is, the prevention of drop-outs from secondary schools.

We have chosen not to follow the decision in Kissick v. Garland Independent School District, supra, because we feel that the rule there should be abandoned for one that is non-discriminatory and which does not violate constitutionally guaranteed rights. This court has concluded that the injunctive relief sought by appellant Bell should have been granted by the trial court because the appellees did not establish that the rule against married students participating in extra-curricular activities was a necessary restraint to promote a compelling state interest. We hold as a matter of law that as to married students the questioned rule is on its face discriminatory and in violation of 42 U.S.C.A. § 1983 and the Fourteenth Amendment of the United States Constitution. Moran v. School District No. 7, Yellowstone County, 350 F. Supp. 1180 (D.C.Montana 1973); Davis v. Meek, 344 F.Supp. 298 (D.C.Ohio 1972) Holt v. Shelton, 341 F.Supp. 821 (Middle District of Tennessee, 1972).

The trial court erred in failing to issue the temporary injunction sought by appellant. The judgment of the trial court is reversed and remanded with instructions to issue a temporary injunction enjoining the Lone Oak Independent School District and its Board of Trustees from enforcing the rule prohibiting Edward Ray Bell from participating in football activities of the Lone Oak Independent School District and from excluding him from membership on the school football team because of his marital status.

CORNELIUS, Justice (concurring).

I concur. The rule in question is clearly a constitutionally impermissible discrimination by the state against a particular class of its citizens. Similar rules have been held unconstitutional in the federal court cases of Hollon v. Mathis I.S.D. (U.S.D. Tex.1973), 358 F.Supp. 1269; Holt v. Shelton (U.S.D.C.1972), 341 F.Supp. 821; Davis v. Meek (U.S.D.C.1972), 344 F. Supp. 298; Moran v. School District (U. S.D.C.1972), 350 F.Supp. 1180; Romans v. Crenshaw (U.S.D.C.Tex.1972), 354 F.Supp. 868, and several others, as have other regulations or discrimination in many cases involving analogous classifications. See Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349; Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225; McErlain v. Taylor (S.Ct.Ind.1934), 207 Ind. 240, 192 N.E. 260, 94 A.L.R. 1284; Haas v. South Bend Community School Corporation (S.Ct.Ind.1972), 289 N.E.2d 495; McLeod v. State, (S.Ct.Miss.1929), 154 Miss. 468, 122 So. 737, 63 A.L.R. 1161. See also Sprogis v. United Air Lines, Inc. (U.S.Ct.App.Seventh, 1971) 444 F.2d 1194, cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543. There are some earlier state cases which have upheld rules similar to the one in question here, but as said by the court in Holt v. Shelton, supra, ". . . they are either inapposite or they fail to apply the appropriate constitutional standard."

The regulations of a public school district constitute "state action" in the constitutional sense. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731; Haas v. South Bend Community School Corporation, supra. To be enforceable, therefore, they must square with the constitutional requirements of "equal protection of the laws."

Not every state action which results in different treatment for different classes of citizens violates the United States Constitution. Reed v. Reed, supra; Tigner v. State of Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124; Colgate v. Harvey, 296 U. S. 404, 56 S.Ct. 252, 80 L.Ed. 299. A state may validly impose special burdens upon certain classes of its citizens in order to achieve permissible ends, but the equal protection clause of the Constitution requires that in selecting and defining a class of citizens subject to such burdens, the distinctions which are drawn must have some rational relationship or relevance to the purpose for which the classification is made. Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577; Reed v. Reed, supra; McErlain v. Taylor, supra; Eisenstadt v. Baird, supra. Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109; Metropolitan Casualty Insurance Co. of New York v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070; 16 Am.Jur.2d p. 875, Sec. 501. Stated another way, there must be a rational relation between the *status* of the classified citizens and the *subject matter of the regulation.* McErlain v. Taylor, supra; Kotch v. River Port Pilot Commissioners, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093; Asbury Hospital v. Cass County, North Dakota, 326 U.S. 207, 66 S. Ct. 61, 90 L.Ed. 6. If the action affects a fundamental constitutional right of the classified citizens, it is subject to strict judicial scrutiny, and there must not only be a rational relationship between the classification and the subject matter of the regulation, but the classification and the resulting

regulation must also be "necessary to promote a compelling governmental interest." Shapiro v. Thompson, 394 U.S. 618, 89 S. Ct. 1322, 22 L.Ed.2d 600; Eisenstadt v. Baird, supra.

To say that the right to play football, or even the right to an education[1] is not a constitutionally guaranteed right is to completely miss the issue involved here. That would be a pertinent question if we were attempting to decide if the state is obligated by the U. S. Constitution *to provide* an education or an athletic program for its citizens, but that is not the issue. Our question is whether the state, *having voluntarily chosen to provide an athletic program* for its school pupils, can discriminate in the furnishing of that program so as to exclude some of those students from an opportunity to participate in it. According to the long established constitutional principle noted earlier, the state cannot so discriminate unless the status or the characteristics of the excluded students have some rational relation *to the activity from which they are excluded*, which gives rise to a legitimate state interest that *they not participate in the activity*. See Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed. 620; Haas v. South Bend Community School Corporation, supra; McErlain v. Taylor, supra; Holt v. Shelton, supra.

Justice Ray correctly observes that a rule which excluded students from an opportunity to participate in school athletics on the basis of race, would be readily conceded by everyone to be unconstitutional. Not only is race an arbitrary classification *per se*, but there would be no rational relation between race and the subject matter of the regulation. As a further example

more analogous to the issue before us, it may be conceded that a state has no federal constitutional obligation to provide paved highways for its citizens, but *having voluntarily provided paved highways* for its citizens through the use of public funds and state action, the state cannot then exclude married persons from using such highways merely because they are married. Marital status has no rational relation to the use of the highways.

The exclusion of students from the opportunity to participate in certain athletic programs provided by the state might be constitutionally justified as to classifications based upon the size, the physical health, the age, the scholastic standing, and even (as to contact sports)[2] the sex of the students, because there is a reasonable relation between the classification and the activity, which gives rise to a legitimate state interest that the students falling into such classifications *not participate in such programs*. The health, the safety, the school work, or the moral welfare of such students might be adversely affected by such participation, and the state has a natural and rightful interest in protecting its school pupils from such adverse effects. There is no such rational relation between the status of being married and participation in athletics.

If the purpose of the rule is to discourage other students from marrying while in school, it is still constitutionally impermissible, even though the school district might commendably desire to discourage student marriages. Ordinarily, it is a legitimate exercise of state power to penalize certain conduct by withholding privileges from those who are guilty of such conduct, pro-

1. See San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16. *Rodriguez* did not hold that the equal protection clause was inapplicable to rights related to education. It held that the question of whether education is a constitutionally guaranteed right determined whether the test of "strict judicial scrutiny" and compelling State interest, or only the traditional equal protection test of "rational relationship"

was required in judging the validity of the state action.

2. It has been held that the exclusion of female students from non-contact athletic programs solely on the basis of their sex violates the equal protection clause of the United States Constitution. Haas v. South Bend Community School Corporation, supra.

vided that such conduct is unlawful, or has a rational relationship to such privileges which justifies the withholding of them. But absent such "rational relationship," the state cannot penalize conduct which it has expressly allowed and approved by statute. The appellant here contracted a marriage which was perfectly legal under the statutes of Texas. As his marriage was in full compliance with every aspect of state law, it has received the full sanction of the public policy of this state as expressed by its Legislature. The regulation of marriage is the sole province of the Legislature. The school district has no authority to repeal or modify those regulations, and it cannot penalize appellant for exercising his statutory right, unless the "rational relationship" explained above exists. Davis v. Meek, supra; Moran v. School District, supra.

Without regard to whether the right to participate in athletics, or even the right to secure an education, is a guaranteed right under the U. S. Constitution, the United States Supreme Court has held that the right to marry, subject to reasonable regulation by the state, is not only a constitutionally guaranteed right, but is a "fundamental constitutional right." See Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010; Skinner v. State of Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655; Cleveland Board of Education v. LaFleur et al. 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). The case of Davis v. Meek, supra, and others have held that a rule such as that involved here puts an unlawful burden upon the student's fundamental constitutional right to marry. It is elementary that state action which is designed ". . . . to chill the assertion of constitutional rights by penalizing those who choose to exercise them, ·[is] patently unconstitutional." United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138; Shapiro v. Thompson, supra. See also O'Neill v.

Dent[3] (U.S.D.C., N.Y.1974), 364 F.Supp. 565.

It may be conceded that the right to *participate* in an extracurricular program of athletics is a fragile one at best, as the applicant for such participation, by reason of lack of size, stamina, speed or other athletic prowess may not be able to make the team. However, these exclusionary criteria all have a rational relationship to the regulated activity. Exclusion from the team for such reasons is entirely different from the exclusion which is before us. Additionally, in those cases all students are afforded *the opportunity to qualify*; whereas, in our case married students are arbitrarily denied *even the opportunity* to qualify for the program regardless of their competitive ability. As said in Haas v. South Bend Community School Corporation, supra, the fact that some students may not be able to qualify for the team has no bearing upon the student's right to the opportunity to qualify.

It may be contended that there was disputed evidence presented to the trial court, and therefore his presumed fact findings in support of his judgment must be upheld on appeal. This is a correct statement of the rule, but it has no application here. Whether there is a "rational relationship giving rise to a legitimate state interest" is not a question of fact but is a question of law. People v. Sisk (Ill.S.Ct.1921), 297 Ill. 314, 130 N.E. 696; 16 C.J.S. Constitutional Law, p. 344. Whether or not certain alleged facts *exist* is a question of fact for the trier of fact to determine. But whether the facts so found to exist *constitute the rational relationship* giving rise to a legitimate state interest is a question of law which this court must determine for itself, based upon well settled legal principles established through the years of our jurisprudence. Upon the record here, tested by the legal principles announced by the United States Supreme Court and other

---

3. Holding that a rule excluding married men from the U. S. Merchant Marine Academy is unconstitutional.

courts of this nation—even taking the facts alleged by the school district to be true—there is a complete failure to show that the rule in question ". . . is even rationally related to, not to mention necessary to promote any legitimate state interest . . ." that married persons be arbitrarily excluded from an athletic program which the state, through its school district, has voluntarily chosen to provide for its school pupils.

Whatever one's right may be to have a program of school athletics provided for him, it is recognized by the courts that once extra-curricular activities such as athletics are furnished as a part of the school program, they constitute an integral and complementary part of the total school program, and that a student's right to participate in them is a valuable right which the courts will recognize and protect. See Tinker v. Des Moines I.S.D., supra; Williams v. Eaton (U.S.Ct. of App. Tenth Circuit, 1971), 443 F.2d 422. But the governing principle in a case such as the one before us was aptly stated by the United States Supreme Court when it said:[4]

"Whatever the rights of the individual . . . the rights must be the same for the unmarried and the married alike." Eisenstadt v. Baird, supra. Unless there is some ground of difference rationally explaining the different treatment of married and unmarried persons which is necessary to achieve a legitimate state interest, state action which provides ". . . dissimilar treatment for married and unmarried persons who are similarly situated, . . . violate[s] the Equal Protection Clause . . ." of the United States Constitution.

I therefore conclude that the rule which would deny appellant the opportunity to participate in the football program furnished by the School District solely on the ground that he is married constitutes state action in violation of the equal protection clause of United States Constitution. As the rule violates the equal protection clause of the United States Constitution, it also violates Article I, Sec. 3 of the Texas Constitution. Consequently, appellant was entitled to the relief he sought.

CHADICK, Chief Justice (dissenting).

This is an appeal from a trial court order refusing a temporary injunction. The only issue to be resolved is whether or not the trial judge abused his discretion. Janus Films, Inc. v. City of Fort Worth, 163 Tex. 616, 358 S.W.2d 589 (1962); Manning v. Wieser, 474 S.W.2d 448 (Tex.Sup. 1971). Abuse of discretion turns on whether or not the petitioner in the trial court showed himself entitled to the relief sought as a matter of law.

The school district, a state agency, offers all except married students an opportunity to participate in an athletic program, which includes football. The appellant is a married student that has been denied the privilege of playing on the school football team because he is married.[1] Such discrimination cannot be sustained unless the rule that excludes him is a necessary restraint to promote a compelling public interest. In support of the school's rule denying married students participation in the school's athletic program, the school superintendent testified that the drop-out percentage among married students was higher than normal for the entire student body. He acknowledged that the rule was designed to discourage teenage marriage and thereby eliminate a cause of school drop-

---

4. Concerning the right to purchase contraceptives.

1. The qualification for team membership is not shown by the record, but from common knowledge it is known a very discriminating process is followed in the selection of the team membership. Only a small percentage of students are selected and those must have cer-

tain natural or acquired physical and mental skills and endowments. Desire to win, tenacity, and endurance are much sought after qualities. A big, fast man is always selected over a small, slow one, and no woman is considered. The student's height, weight, speed, reactions, mental poise, etc., are placed in the balance and only those that have superior aptitude are selected.

outs. This evidence, though not particularly weighty or cogent, was received without objection and is undisputed in the record. Evidence of similar import served as a foundation for the decision in Kissick v. Garland Independent School District, 330 S.W.2d 708 (Tex.Civ.App.Dallas, wr. ref'd, n. r. e.) upholding a similar rule. The facts in the case were not fully developed. The surface was barely scratched. The record indicates the trial judge was required to decide a case in which he was presented with considerably more law than fact. He recognized, his judgment implies, that both marriage and public education can exist without one impinging upon the other. He had the difficult task of reaching a delicate balance between the two revered institutions. Apparently he thought there was room for both; he undertook to accommodate both. These institutions may be characterized as worthy favorites of the law, but the lawgivers, the courts and Legislature, have never paused, stood abashed, or lacked for zeal in regulating each of them. Special codes, numerous statutes, constitutional provisions, vast appropriations, as well as reams of court opinions and uncounted writs, orders, judgments and decrees boldly affirm the readiness of the lawgivers to regulate and are compelling evidence of the resilience and malleability of the institutions.

On the basis of the record before him, the trial judge was warranted in deciding that the rule in question did not unduly compromise the institution of marriage and that its effect fostered public education by eliminating or tending to eliminate a cause of students improvidently dropping out of school before completion of prescribed studies. In other words, the trial judge's refusal to grant a temporary injunction implies that he found the appellant's right to participate in school activities by playing on the school football team did not outweigh and rationally should not be paramount to the right and duty of the school board to promulgate a rule that was calculated to cause students to continue in the educational program offered by the school. From this record, it cannot be said the trial judge abused his discretion in finding the rule was a necessary restraint affecting only insubstantial marital and educational rights in order to promote a compelling state interest. The result of such implied findings is that the applicant did not show a right to an injunction as a matter of law.

At a trial on the permanent injunction issue plead by appellant, all relevant facts should be produced. In an appeal therefrom, this court may speak to the issues with more confidence. I would affirm the judgment in this appeal and await further development of the case before undertaking to write decisively upon the problems that a fully developed case might present. At this stage in the proceedings, respect for the burden carried by the school board in its largely unappreciated task of providing educational opportunities for the young mutely beseeches this court not to rush to a judgment that lets the athletic tail wag the educational dog.

The majority assumes, without bothering to hear what the facts may be, that no facts do or can exist that would show the rule has a rational relationship to a legitimate state objective. In much the same way, some people conclude the earth is flat. Before the majority of the court spoke, I thought the United States Supreme Court held the world's record for jumping from a flimsy base to an unnecessary conclusion, but this calls for a measurement. I respectfully dissent.