**SPRING BRANCH I.S.D., et al., Appellants,**

v.

**Chris STAMOS, Individually and A/N/F of Nicky Stamos, et al., Appellees.**

No. C–4184.

Supreme Court of Texas.

July 10, 1985.

Rehearing Denied Sept. 16, 1985.

Jim Mattox, Atty. Gen., Kevin T. O'Hanlon, Asst. Atty. Gen., Austin, Robert B. Hinsley, F. James Wunderlich, Jack Zimmerman, Jonathan C. Hantke, Houston, for appellants.

Miller, Keeton, Brostow and Brown, W. Robert Brown, Harpold, McDonald and

Fitzgerald, Anthony D. Sheppard, Houston, for appellees.

RAY, Justice.

This is a direct appeal brought by the Attorney General, representing the Texas Education Agency, and others, seeking immediate appellate review of an order of the trial court which held unconstitutional, and enjoined enforcement of, a provision of the Texas Education Code. This court has jurisdiction over this cause pursuant to Tex. Const. art. V, § 3-b and Tex.Rev.Civ.Stat. Ann. art. 1738a (Vernon Supp.1985). We hold that the statutory provision is not unconstitutional and reverse the judgment of the trial court.

Chris Stamos and others brought this suit on behalf of Nicky Stamos and others, seeking a permanent injunction against enforcement of the Texas "no pass, no play" rule by the Spring Branch and Alief Independent School Districts. The Texas Education Agency and the University Interscholastic League intervened. The district court issued a temporary restraining order and later, after a hearing, a temporary injunction enjoining all parties from enforcing the rule. This court issued an order staying the district court's order and setting the cause for expedited review.

### THE "NO PASS, NO PLAY" RULE

The Second Called Session of the 68th Legislature adopted a package of educational reforms known as "H.B. 72." Act of July 13, 1984, Chapter 28, 1984 Tex.Gen. Laws, 2nd Called Session 269. A major provision of these educational reforms was the so-called "no pass, no play" rule, which generally requires that students maintain a "70" average in all classes to be eligible for participation in extracurricular activities. *See* Tex.Educ.Code Ann. § 21.920(b) (Vernon Supp.1985). The rule is incorporated in section 21.920 of the Texas Education Code and provides as follows:

§ 21.920. Extracurricular Activities

(a) The State Board of Education by rule shall limit participation in and practice for extracurricular activities during the school day and the school week. The rules shall, to the extent possible, preserve the school day for academic activities without interruption for extracurricular activities. In scheduling those activities and practices, a district must comply with the rules of the board.

(b) A student, other than a mentally retarded student, enrolled in a school district in this state shall be suspended from participation in any extracurricular activity sponsored or sanctioned by the school district during the grade reporting period after a grade reporting period in which the student received a grade lower than the equivalent of 70 on a scale of 100 in any academic class. The campus principal may remove this suspension if the class is an identified honors or advanced class. A student may not be suspended under this subsection during the period in which school is recessed for the summer or during the initial grade reporting period of a regular school term on the basis of grades received in the final grade reporting period of the preceding regular school term.

(c) In this section, "mentally retarded" has the meaning assigned by Section 21.-503(b)(5) of this code.

(d) Subsection (b) of this section applies beginning with the spring semester, 1985.

### ISSUES RAISED

The sole issue before this court is the constitutionality of the no pass, no play rule. The district court held the rule unconstitutional on the grounds that it violated equal protection and due process guarantees. The burden is on the party attacking the constitutionality of an act of the legislature. *Texas Public Building Authority v. Mattox,* 686 S.W.2d 924, 927 (Tex.1985). There is a presumption in favor of the constitutionality of an act of the legislature. *See Sax v. Votteler,* 648 S.W.2d 661, 664 (Tex.1983).

This court has long recognized the important role education plays in the main-

tenance of our democratic society. Article VII of the Texas Constitution "discloses a well-considered purpose on the part of those who framed it to bring about the establishment and maintenance of a comprehensive system of public education, consisting of a general public free school system and a system of higher education." *Mumme v. Marrs*, 120 Tex. 383, 40 S.W.2d 31, 33 (1931). Section 1 of article VII of the Constitution establishes a mandatory duty upon the legislature to make suitable provision for the support and maintenance of public free schools. 40 S.W.2d at 36. The Constitution leaves to the legislature alone the determination of which methods, restrictions, and regulations are necessary and appropriate to carry out this duty, so long as that determination is not so arbitrary as to violate the constitutional rights of Texas' citizens. *Id.*

### Equal Protection

■ Stamos challenges the constitutionality of the "no pass, no play" rule on the ground that it violates the equal protection clause of the Texas Constitution. The first determination this court must make in the context of equal protection analysis is the appropriate standard of review. When the classification created by a state regulatory scheme neither infringes upon fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest. *Sullivan v. University Interscholastic League*, 616 S.W.2d 170, 172 (Tex.1981). Therefore, we must first determine whether the rule burdens an inherently suspect class or infringes upon fundamental rights or interests.

■ The no pass, no play rule classifies students based upon their achievement levels in their academic courses. We hold that those students who fail to maintain a minimum level of proficiency in all of their

courses do not constitute the type of discrete, insular minority necessary to constitute a "suspect" class. *See United States v. Carolene Products Co.*, 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938). Thus, the rule does not burden an inherently "suspect" class.

■ Stamos urges that the rule discriminates against another suspect class, i.e., students with learning disabilities. However, this claim is made on behalf of a person who was not a party to the lawsuit at the time the trial judge signed her order or even at the time this court stayed the injunction and set the cause for argument. Furthermore, the claim is made against a new defendant who was not a party before the district court. By adding new parties, appellees are now attempting to vary their theory of the case. "Parties are restricted in the appellate court to the theory on which the case was tried in the lower court." *Safety Casualty Co. v. Wright*, 138 Tex. 492, 160 S.W.2d 238, 245 (1942). Therefore, the issue concerning students with learning disabilities is not properly before this court.[1]

Stamos also argues that the rule is subject to strict scrutiny under equal protection analysis because it impinges upon a fundamental right, i.e., the right to participate in extracurricular activities. We note that the overwhelming majority of jurisdictions have held that a student's right to participation in extracurricular activities does *not* constitute a fundamental right. *See, e.g., Hardy v. University Interscholastic League*, 759 F.2d 1233, 1235 (5th Cir.1985); *Walsh v. Louisiana High School Athletic Ass'n*, 616 F.2d 152, 160–61 (5th Cir.1980); *Pennsylvania Interscholastic Athletic Ass'n, Inc. v. Greater Johnstown School District*, 76 Pa.Commw. 65, 463 A.2d 1198, 1202 (1983); and *Smith v. Crim*, 240 Ga. 390, 240 S.E.2d 884, 885 (1977).

1. The legislature recently enacted an amendment to the no pass, no play rule, effective September 1, 1985, providing an exemption for learning disabled and all handicapped students.

*See* Tex.H.B. 1731, Acts of the 69th Leg., Reg. Sess. (1985) [to be codified at Tex.Educ.Code Ann. § 21.920 (Vernon Supp.1986)].

Stamos cites the case of *Bell v. Lone Oak Independent School District*, 507 S.W.2d 636 (Tex.Civ.App.—Texarkana), *writ dism'd*, 515 S.W.2d 252 (Tex.1974) for the proposition that students have a fundamental right to participate in extracurricular activities. In *Bell*, a school regulation prohibited married students from participating in extracurricular activities. Because the regulation impinged upon the fundamental right of marriage, the court of appeals held the regulation subject to strict scrutiny and struck it down because the school district had shown no compelling interest to support its enforcement. 507 S.W.2d at 638–39. The presence of a fundamental right (marriage) distinguishes *Bell* from the present cause.

Fundamental rights have their genesis in the express and implied protections of personal liberty recognized in federal and state constitutions. A student's "right" to participate in extracurricular activities does not rise to the same level as the right to free speech or free exercise of religion, both of which have long been recognized as fundamental rights under our state and federal constitutions. We adopt the majority rule and hold that a student's right to participate in extracurricular activities *per se* does *not* rise to the level of a fundamental right under our constitution.

Because the no pass, no play rule neither infringes upon fundamental rights nor burdens an inherently suspect class, we hold that it is *not* subject to "strict" or heightened equal protection scrutiny. Rather, the rule must be judged by the standard set forth in *Sullivan v. UIL*. In *Sullivan*, this court struck down on equal protection grounds the U.I.L.'s non-transfer rule, which declared all non-seniors ineligible for varsity football and basketball competition for one year following their transfer to a new school. This court emphasized (1) the over-inclusiveness of the rule in light of its intended purpose of discouraging "recruitment" of student-athletes, and (2) the irrebuttable presumption created by the rule. *Sullivan*, 616 S.W.2d at 172–73. In view of these two factors, this court declared

that the rule was *not* rationally related to its intended purpose. *Id.*

The no pass, no play rule distinguishes students based upon whether they maintain a satisfactory minimum level of performance in each of their classes. Students who fail to maintain a minimum proficiency in all of their classes are ineligible for participation in school-sponsored extracurricular activities for the following six-week period, with no carry over from one school year to the next. The rule provides a strong incentive for students wishing to participate in extracurricular activities to maintain minimum levels of performance in all of their classes. In view of the rule's objective to promote improved classroom performance by students, we find the rule rationally related to the legitimate state interest in providing a quality education to Texas' public school students. The rule does not suffer from either of the vices found determinative in *Sullivan v. UIL*.

The distinctions recognized in the rule for mentally retarded students and students enrolled in honors or advanced courses likewise do not render the rule violative of the equal protection guarantees of the Texas Constitution. While the statute itself does not deprive students of their right to equal protection of the law, we recognize that the discretion given to school principals in the rule's provision dealing with honors or advanced courses may well give rise to arbitrary or discriminatory application violative of equal protection principles. *See Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). We are faced with no allegations of discriminatory application of the rule's honors exception in the present case.

### Procedural Due Process

We begin our analysis of the due process arguments in this cause by recognizing that the strictures of due process apply only to the threatened deprivation of liberty and property interests deserving the protection of the federal and state constitutions. *Tarrant County v. Ashmore*, 635

S.W.2d 417, 422 (Tex.1982), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 606 (1982); *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); and *Board of Regents v. Roth,* 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The federal courts have made it clear that the federal constitution's due process guarantees do not protect a student's interest in participating in extracurricular activities. *See Niles v. University Interscholastic League,* 715 F.2d 1027, 1031 (5th Cir.1983); *Mitchell v. Louisiana High School Athletic Ass'n,* 430 F.2d 1155, 1158 (5th Cir.1970); *see also, Hamilton v. Tennessee Secondary School Athletic Ass'n,* 552 F.2d 681, 682 (6th Cir.1976); and *Albach v. Odle,* 531 F.2d 983, 984–85 (10th Cir.1976). We must, then, examine our state constitution to determine whether its due process guarantees extend to a student's desire to participate in school-sponsored extracurricular activities.

A property or liberty interest must find its origin in some aspect of state law. *See Board of Regents v. Roth,* 408 U.S. at 577–78, 92 S.Ct. 2709. Nothing in either our state constitution or statutes entitles students to an absolute right to participation in extracurricular activities. We are in agreement, therefore, with the overwhelming majority of jurisdictions that students do not possess a constitutionally protected interest in their participation in extracurricular activities. *See, e.g., Caso v. New York State Public High School Athletic Ass'n, Inc.,* 78 A.D.2d 41, 434 N.Y. S.2d 60, 64 (N.Y.App.Div.1980); *Menke v. Ohio High School Athletic Ass'n,* 2 Ohio App.3d 244, 441 N.E.2d 620, 624 (1981); *Whipple v. Oregon School Activities Ass'n,* 52 Or.App. 419, 629 P.2d 384, 386 (1981); *Adamek v. Pennsylvania Inter Scholastic Athletic Ass'n, Inc.,* 57 Pa.Commw. 261, 426 A.2d 1206, 1207 n. 1 (Pa.Commw.Ct. 1981); and *Bailey v. Truby,* 321 S.E.2d 302, 314–15 (W.Va.1984). Therefore, the strictures of procedural due process do *not* apply to the determination by a campus principal, pursuant to section 21.920(b) of the Texas Education Code, as to whether a student who fails an identified honors or advanced course shall be permitted to participate in extracurricular activities.

*Substantive Due Process*

Stamos cites *Spann v. City of Dallas,* 111 Tex. 350, 235 S.W. 513 (1921), to support his argument that the rule violates principles of fundamental fairness and notions of substantive due process by giving school principals discretion to determine whether students who fail honors or advanced courses may participate in extracurricular activities. *Compare Moore v. City of East Cleveland,* 431 U.S. 494, 502–03, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977). In *Spann,* this court declared void a city ordinance that required persons seeking to construct commercial buildings within residential areas to first obtain the consent of both neighboring residents and the city building inspector. There, we found that the ordinance provided no standards for builders or building inspectors with regard to the proper design for such buildings. 235 S.W. at 517. By leaving the approval for such buildings "subject to the arbitrary discretion of the inspector," the ordinance violated the would-be builders' property right to use their property as they saw fit. *Id.* This court emphasized that the ordinance in *Spann* infringed upon well-recognized property rights by permitting wholly arbitrary limitations upon the uses which owners could make of their property. *Id.* at 514–15.

In the present case, appellees liken the school principals' unfettered discretion in determining both which classes shall constitute "advanced" or "honors" courses and whether students failing such classes may participate in extracurricular activities to the building inspectors' unfettered discretion over approving commercial building plans. *Spann* is distinguishable for the obvious reason that a recognized property interest was affected by the Dallas ordinance. As stated previously, students have no constitutionally protected interest in participation in extracurricular activities. Because no constitutionally protected interest is implicated by this delegation of au-

thority to school principals, no violation of due process, substantive or procedural, results therefrom.

■ We do not agree with Stamos' argument that a school principal's exercise of discretion pursuant to the "honors" exception to the rule is shielded from all review. Arbitrary, capricious, or discriminatory exercise of a school principal's discretion pursuant to subsection 21.920(b) of the Texas Education Code may well give rise to claims based upon equal protection grounds. *See Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Accreditation audits of schools and school districts may also afford relief against improper utilization of the "honors" exception. We also note there are no findings of fact before us that any of the student-plaintiffs received failing grades in honors or advanced courses.

Finally, Stamos argues that because the no pass, no play rule did not become effective until April 5, 1985, it was applied in an *ex post facto* manner to the students involved in this case. We choose not to address this issue, because we have no findings of fact before us relating to the circumstances surrounding the application of the rule to any of the concerned students. We note that the district court has yet to address this issue.

Accordingly, we reverse the district court's judgment with regard to the constitutionality of section 21.920 of the Texas Education Code and dissolve the temporary injunction ordered by the district court.