# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

December 14, 2004

The Honorable Mike Stafford
Harris County Attorney
Appraisal District Section
Post Office Box 920975
Houston, Texas 77292-0975

Opinion No. GA-0283

Re: Whether Tax Code section 6.025(d) requires chief appraisers in overlapping appraisal districts to enter on the tax roll either the property's lowest market value or lowest appraised value established by the two districts, but not both the lowest market value and the lowest appraised value (RQ-0239-GA)

Dear Mr. Stafford:

On behalf of the Harris County Appraisal District (the District), you ask whether Tax Code section 6.025(d) requires chief appraisers in overlapping appraisal districts to enter on the tax roll either the property's lowest market value or lowest appraised value established by the two districts, but not both the lowest market value and the lowest appraised value.[1]

## I.    The Appraisal Process

### A.    Generally

The legislature has established in each county an appraisal district, the boundaries of which are generally coextensive with those of the county. *See* TEX. TAX CODE ANN. §§ 6.01(a), .02(a) (Vernon 2002). Except as chapter 23 of the Tax Code permits, the appraisal district annually must appraise taxable property "at its market value as of January 1." *Id.* § 23.01(a). *See generally Harris County Appraisal Dist. v. Bradford Realty*, 919 S.W.2d 131, 133 (Tex. App.–Houston [14th Dist.] 1994, no writ) (summarizing the appraisal process). The chief appraiser, who is the appraisal office's chief administrator, is to determine the market value of each piece of property by applying "generally accepted appraisal methods and techniques." TEX. TAX CODE ANN. §§ 6.05(c), 23.01(b) (Vernon 2002).

By approximately May 15, the chief appraiser must prepare appraisal records, which list all taxable property in the district and state the appraised value of each. *See id.* § 25.01(a). The

---

[1]*See* Request Letter and attached Memorandum Brief from Honorable Mike Stafford, Harris County Attorney, to Honorable Greg Abbott, Texas Attorney General (June 10, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter and Memorandum Brief].

appraisal records must include, with respect to each piece of taxable real property, the land's appraised value and, if the land was appraised under chapter 23, subchapters C, D, E, or H ("Land Designated for Agricultural Use," "Agricultural Land," "Timber Land," and "Restricted-Use Timber Land"), the land's market value. *Id.* § 25.02(a)(5); *see also id.* ch. 23, subch. C, D, E, H (Vernon 2002 & Supp. 2004-05). At about the same time, the chief appraiser must notify each property owner of the property's appraised value if (1) the appraised value is greater than it was the preceding year; (2) the appraised value is greater than the value the property owner rendered; or (3) the property was not on the appraisal roll in the previous year. *See id.* § 25.19(a) (Vernon Supp. 2004-05). *But see id.* § 25.19(e) (stating that a chief appraiser need not notify the property owner of an appraised value that is greater than the preceding year's value if the increase is $1,000 or less). In the notice, the chief appraiser must separately list the land's market value and the total market value of any improvements on the property. *See id.* § 25.19(f). The property owner then may file a protest with the appraisal review board contending that the property's appraised or market value is incorrect. *See id.* § 41.41(a)(1). The appraisal records, once approved by the appraisal review board, become the district's appraisal roll. *See id.* § 25.24.

The appraisal district "is responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district." *Id.* § 6.01(b). Taxing units include counties, municipalities, school districts, special districts (such as junior college districts, hospital districts, water districts, mosquito control districts, and fire prevention districts), and other political units that are authorized to impose and are imposing ad valorem taxes. *See id.* § 1.04(12). A taxing unit's territory sometimes extends into more than one appraisal district. *See id.* § 6.02(b). A taxing unit whose territory extends into more than one county may choose to have each county appraisal district appraise the property lying in that county or may choose to have one county appraisal district appraise all of the property within the taxing unit's boundaries, even that lying in another county. *See id. See generally* Tex. Att'y Gen. LO-98-022, at 1-2 (discussing properties in overlapping districts). Given that one piece of property may be within multiple taxing units—some of which extend into more than one county—more than one appraisal district may appraise the property. You refer to this situation, where multiple appraisal districts appraise some of the same property, as "overlapping appraisal districts." Memorandum Brief, *supra* note 1, at 1.

## B.     Tax Code Section 6.025

For several reasons, an appraisal district may assign a piece of property a value that differs from that assigned by an overlapping district. In the first place, as you suggest, "property appraisal is an inexact process," and it is therefore to be expected that different appraisers may assign different values to the same property. Memorandum Brief, *supra* note 1, at 1. In addition, each appraisal district with jurisdiction over a particular piece of property may calculate the property's appraised value using different methods. *See* TEX. TAX CODE ANN. § 23.0101 (Vernon 2002) (directing a chief appraiser to consider alternate appraisal methods). Also, "[w]hen the appraisers in the overlapping appraisal districts establish different values, the property owner often files a protest in the appraisal district which set the higher value, citing the lower appraisal as support for a reduction in value. The likelihood of having differing values is compounded when an [a]ppraisal [r]eview [b]oard changes a value during a protest hearing." Memorandum Brief, *supra* note 1, at 1. Furthermore, overlapping appraisal districts may use different appraisal cycles so that one district

may reappraise property every two years, while another district reappraises property every three years. *See id.* at 9; *see* TEX. TAX CODE ANN. § 25.18(a)-(b) (Vernon 2002) (requiring each appraisal office to implement a plan to reappraise property at least once every three years).

Section 6.025 of the Tax Code attempts to deal with the situation in which overlapping appraisal districts appraise the same piece of property at different values. *See* TEX. TAX CODE ANN. § 6.025 (Vernon Supp. 2004-05). Section 6.025 requires the chief appraisers of overlapping appraisal districts to coordinate their appraisals and the value of property in overlapping districts:

> (a) The chief appraisers of two or more appraisal districts that have boundaries that include any part of the same territory shall enter into a written understanding that, with respect to the property located in the territory in which each of the districts has appraisal jurisdiction:
>
> > (1) permits each appraiser to have access to and use information appropriate to appraisals, including a record of an exemption application, rendition, or other property owner report;
> >
> > (2) eliminates differences in the information in appraisal records of the districts, including information relating to ownership of property, the description of property, and the physical characteristics of property; and
> >
> > (3) contains the form of a written advisory prescribed by the comptroller informing the owners of property that reports and other documents required of the owners must be filed with or sent to each appraisal district and that the owners should consider sending any other document relating to the property to each appraisal district.
>
> (b) The advisory described by Subsection (a)(3) may be sent to a property owner having property appraised by each district when the notice of appraised value . . . is sent.
>
> (c) The chief appraisers of appraisal districts described by Subsection (a) shall to the extent practicable coordinate their appraisal activities so as to encourage and facilitate the appraisal of the same property appraised by each district at the same value.
>
> (d) If on May 1 all the chief appraisers of the appraisal districts described by Subsection (a) in which a parcel or item of property is located are not in agreement as to the *appraised or market*

> *value* of the property, on that date each of the chief appraisers shall enter as the *appraised or market* value of the property on the appraisal records of the appropriate appraisal district the lowest *appraised or market value* of the property as determined by any of the chief appraisers. If as a result of a protest, appeal, or other action the *appraised or market value* of the property is subsequently reduced in any of the appraisal districts, the chief appraiser shall notify each of the appraisal districts of the reduced *appraised or market value*. The chief appraiser of each appraisal district shall enter that reduced *appraised or market value* on the appraisal records as the *appraised or market value* of the property. If the *appraised or market value* is reduced in more than one appraisal district, each chief appraiser shall enter the lowest of *those values* on the appraisal records.

*Id.* (emphasis added).

## II.    The Issues Raised

Your question involves the repeated references to "appraised or market values" in section 6.025(d). *See* Request Letter, *supra* note 1, at 1. You ask in particular whether a chief appraiser may enter either the lowest appraised value or the lowest market value, or whether the appraiser must record both the lowest appraised value and the lowest market value.[2] *See id.* Depending on the construction of section 6.025(d) that we adopt, you suggest that its requirements may conflict, in some cases, "with the requirements of Section 23.23 and subchapters D and E of chapter 23." Memorandum Brief, *supra* note 1, at 7. "In these circumstances," you continue, "chief appraisers

---

[2]A brief we have received in connection with your request asks us to consider section 6.025's constitutionality. The briefer in particular suggests that section 6.025 may violate article VIII, sections 1(a) and (b) and 18(c) of the Texas Constitution. *See* Brief from Shannon, Gracey, Ratliff & Miller, L.L.P., to Honorable Greg Abbott, Texas Attorney General, at 1 (July 23, 2004) (on file with Opinion Committee); *see also* TEX. CONST. art. VIII, §§ 1(a)-(b), 18(c). Article VIII, section 1(a) requires that taxation be "equal and uniform," and subsection (b) requires that all real property and tangible personal property be "taxed in proportion to its value, which shall be ascertained as may be provided by law." TEX. CONST. art. VIII, § 1(a)-(b). Section 18, which pertains to the "equalization of valuations," requires the legislature to "provide for equalizing, as near as may be, the valuation of all property subject to or rendered for taxation." *Id.* § 18(a). Section 18 further requires the legislature to provide by general law for "[a] single appraisal within each county of all property subject to ad valorem taxation by the county and all other taxing units located therein." *Id.* § 18(b). Finally, section 18 requires the legislature to provide by general law "for a single board of equalization for each appraisal entity." *Id.* § 18(c).

We do not resolve these constitutional issues here. The briefer is not authorized to request opinions of this office, and no authorized requestor has raised the issues in connection with this request. *See* TEX. GOV'T CODE ANN. §§ 402.042(a)-(b), .043 (Vernon 1998). Regardless of the merit of these questions, we are hesitant to address them in the absence of a request by an authorized requestor and without providing all interested persons an opportunity to brief the issue. We limit this opinion to the question you have asked about the interpretation of section 6.025(d), presuming, as a court is required to do, that the statute is constitutional. *See* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 1998) (stating that the legislature intends statutes to be constitutional); *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996) (presuming that a statute is constitutional); *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 558 (Tex. 1985) (same).

are reluctant . . . to disregard the Chapter 23 provisions in favor of the Section 6.025 provisions." *Id.*

Your question relates in particular to property in overlapping districts that may have different appraised and market values. In most cases, appraised value and market value are equal. Typically, "taxable property is appraised at its market value." TEX. TAX CODE ANN. § 23.01(a) (Vernon 2002). Thus, "[b]y statute, appraised value is market value." *Harris County Appraisal Dist. v. United Inv'rs Realty Trust*, 47 S.W.3d 648, 654 (Tex. App.–Houston [14th Dist.] 2001, pet. denied); *see Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 877 (Tex. 1990) (stating that "[a]ppraised value according to law is fair market value"); *see also Parker County v. Spindletop Oil & Gas Co.*, 628 S.W.2d 765, 767 (Tex. 1982) (construing the word "value" in article VIII, section 1(b) of the constitution, which requires all real property to be "taxed in proportion to its value," to require that "all assessed valuations . . . be based upon reasonable cash market value").

In at least two circumstances, however, you state that a property's appraised value may differ from its market value. *See* Memorandum Brief, *supra* note 1, at 4-5. First, you list as "[t]he most common category of property for which appraised and market value are not always identical is residential property which qualifies as a homestead." *Id.* at 5. Under section 23.23(a) of the Tax Code, a residence homestead's appraised value "may not exceed the lesser of" (1) the property's market value or

> (2) the sum of:
>
> (A) 10 percent of the appraised value of the property for the last year in which the property was appraised for taxation times the number of years since the property was last appraised;
>
> (B) the appraised value of the property for the last year in which the property was appraised; and
>
> (C) the market value of all new improvements to the property.

TEX. TAX CODE ANN. § 23.23(a) (Vernon Supp. 2004-05). Subsection (b) directs the appraiser to "appraise the property at its market value" and to "include in the appraisal records both the market value . . . and the amount computed under Subsection (a)(2)." *Id.* § 23.23(b). Second, you list "property valued under the 'productivity' provisions of Subchapters D and E of Chapter 23, relating to land used for agricultural or timber purposes." Memorandum Brief, *supra* note 1, at 5 (footnote omitted). Subchapter D, pertaining to agricultural land, indicates that the appraised value of "qualified open-space land" may not exceed the land's market value. TEX. TAX CODE ANN. § 23.52(a) (Vernon 2002). The appraised value and the market value both must be recorded. *See id.* § 23.23(b). Subchapter E, which concerns the appraisal of timber land, similarly specifies that the appraised value of "qualified timber land" may not exceed the land's market value. *Id.* § 23.73(a). The chief appraiser must determine the timber land's appraised value as well as its market value and record both values in the appraisal records. *See id.* § 23.73(c).

## III.    Analysis

The terms "appraised" and "market" in section 6.025(d) repeatedly are joined by the word "or," which typically functions as a disjunctive, expressing alternatives. *See Bd. of Ins. Comm'rs v. Guardian Life Ins.*, 180 S.W.2d 906, 908 (Tex. 1944); *Phillips v. State*, 588 S.W.2d 378, 380 (Tex. Crim. App. 1979); *Burnett v. State*, 514 S.W.2d 939, 940-41 (Tex. Crim. App. 1974); *Wood v. Paulus*, 524 S.W.2d 749, 756 (Tex. Civ. App.–Corpus Christi 1975, writ ref'd n.r.e.). While the phrase "appraised or market value" could be construed, as you aver, to permit appraisers to choose the lowest of one value but not the other, we have received a letter from subsection (d)'s author, Representative Burt R. Solomons, suggesting another possible construction.[3] In the case of property located in overlapping districts, Representative Solomons states:

> The chief appraisers may not agree on market value, they may not agree on appraised value, or they may not agree on either. [Subsection (d)] was meant to apply whenever the chief appraisers could not agree on a valuation, thus the language applies to "appraised or market value," whichever valuation is not consistent.

Solomons Letter, *supra* note 3, at 3. In sum, according to the representative, the word "or" expresses an alternative in that "the statute applies to either value, whichever is in conflict." *Id.* at 4. A legislator's post-enactment statement about the intent of legislation, such as Representative Solomons's, is not entitled to probative weight in construing a statute. *See In re Doe*, 19 S.W.3d 346, 352 (Tex. 2000) (noting that "courts construing statutory language should give little weight to post-enactment statements by legislators") (quoting *C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 329 (Tex. 1994) (Hecht, J., concurring and dissenting)); *see also Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex. 1993) (stating that the post-enactment statement of a legislator, "even a statute's principal author, is not legislative history controlling the construction to be given a statute"); Tex. Att'y Gen. Op. No. GA-0016 (2003) at 6 (discounting the persuasive authority of a post-enactment letter from a legislator that attempts to explain the bill's intent).

Given that subsection (d) reasonably may be construed both as you suggest and as Representative Solomons suggests, we look to sources outside the plain text. *See Lee v. Mitchell*, 23 S.W.3d 209, 212-13 (Tex. App.–Dallas 2000, pet. denied) (stating that a court must determine the legislative intent of unambiguous statutory language from the words' "plain and common meaning," but the court may consider the statute's legislative history if the language is ambiguous or would lead to absurd results). "When the wording of a statute is ambiguous," a court consults related legislative history and rules of statutory construction. *City of Wilmer v. Laidlaw Waste Sys., Inc.*, 890 S.W.2d 459, 465 (Tex. App.–Dallas 1994), *aff'd*, 904 S.W.2d 656 (Tex. 1995).

Subsection (d) was added to section 6.025 in 2003. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 1041, § 1(a), 2003 Tex. Gen. Laws 2997, 2997; Act of May 28, 2003, 78th Leg., R.S., ch. 455,

---

[3]*See* Letter from Honorable Burt R. Solomons, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General, at 3 (July 23, 2004) [hereinafter Solomons Letter].

§ 1, 2003 Tex. Gen. Laws 1698, 1698. We have examined the legislative history of subsection (d), and we find that the subsection generally was intended to require appraisers to adopt the same values for property lying in overlapping districts. *See* SENATE FINANCE COMM., BILL ANALYSIS, Tex. H.B. 703, 78th Leg., R.S. (2003). Beyond this, the legislative history does not expressly resolve your question. *See* FISCAL NOTE, Tex. H.B. 703, 78th Leg., R.S. (2003); HOUSE COMM. ON LOCAL GOV'T WAYS & MEANS, BILL ANALYSIS, Tex. H.B. 703, 78th Leg., R.S. (2003); SENATE FINANCE COMM., BILL ANALYSIS, Tex. H.B. 703, 78th Leg., R.S. (2003); *Hearings on H.B. 703 Before the House Comm. on Local Gov't Ways & Means*, 78th Leg., R.S. (Apr. 28, 2003) (statement of Rep. Solomons); *Hearings on H.B. 703 Before the Senate Finance Comm.*, 78th Leg., R.S. (May 22, 2003) (statement of Sen. Janck); Debate on Tex. H.B. 1082 on the Floor of the House, 78th Leg., R.S. (May 8, 2003) (statement of Rep. Solomons) (introducing an amendment that would add section 6.025(d) to a bill dealing with unequal property appraisals).

We finally apply general rules of statutory construction. *See City of Wilmer*, 890 S.W.2d at 465. When enacting a statute, the legislature intends the statute to have "a just and reasonable result." TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 1998). A court will not "give a statute meaning that conflicts with other provisions if" the provisions "reasonably" can be harmonized. *City of Wilmer*, 890 S.W.2d at 465. Additionally, the legislature's object in enacting a statute and the consequences of a possible construction may be helpful in construing the statute. *See* TEX. GOV'T CODE ANN. § 311.023(1), (5) (Vernon 1998).

In our opinion, the language of subsection (d), the legislature's general intent to equalize the values assigned to property in overlapping districts, and the consequences of a contrary construction support construing the statute to require an appraiser to record both the lowest appraised value and the lowest market value. The first time subsection (d) uses the phrase "appraised or market value," it refers to the value that the chief appraisers do not agree on, whether it be the appraised value or the market value. The phrase subsequently refers to the appraised value or market value, whichever is in dispute. In some cases, both values will be disputed, in which case the chief appraisers must record the lowest of each value. This construction harmonizes with section 23.23(a) and other statutes directing that the appraised value may not exceed the property's market value. By adopting the lower of each value, the two values should be coordinated.

Consequently, we construe section 6.025(d) to require chief appraisers in overlapping appraisal districts to enter in the tax records both the lowest market value and the lowest appraised value.

## S U M M A R Y

       With respect to property lying in overlapping appraisal districts, section 6.025(d) of the Tax Code requires the chief appraiser of each of the overlapping districts to enter in the appraisal records the lowest values, appraised and market, listed by any of the overlapping districts.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee