**TEXAS EDUCATION AGENCY,**
Appellant,

v.

**Chris STAMOS, on Behalf of the CLASS of ALL PUBLIC SCHOOL CHILDREN in the STATE of TEXAS, Appellees.**

No. 01–86–00939–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 19, 1991.

Kevin T. O'Hanlon, Leslie L. McCullom, Asst. Atty. Gen., Jeffrey J. Horner, Houston, Lucius D. Bunton, Austin, for appellant.

Connie Ode, Austin, T. Gerald Treece, Robert Brown, Jeffrey A. Davis, Jonathan Hantke, and Anthony Shepard, Houston, for appellees.

Before SAM BASS, DUNN and HUGHES, JJ.

## OPINION ON MOTION FOR REHEARING

SAM BASS, Justice.

Appellant, Lela A. (Mrs. A), individually and as next friend of Nolan A. and the members of the class consisting of all learning disabled (handicapped) public school children, moves the Court for rehearing of this appeal. We deny the motion. We withdraw our previous opinion dated August 8, 1991, and substitute the following in its place.

The master in the trial court below, Gerald Treece, also moves the Court for rehearing of this appeal. Our modification of our opinion renders the master's motion for rehearing moot. Accordingly, we dismiss his motion for rehearing.

Appellant, the Texas Education Agency (TEA), appeals the trial court's judgment assessing against the State of Texas, as costs, the fees and expenses ($23,500) of the court-appointed master in chancery. Cross-appellants (plaintiffs) bring four cross-points of error, complaining of the trial court's judgment rendered against them, which challenged, on federal and state law grounds, TEX.EDUC.CODE ANN. § 21.920 (Vernon 1987) and the related Tex.Educ.Agency, 19 TEX.ADMIN.CODE § 97.113, (West Sept. 15, 1988) (Student Absence for Extracurricular or Other Activities), popularly known as the "no pass, no play rule."

We affirm the trial court's judgment.

The legislature enacted the original version of the statute on July 13, 1984, and made it effective commencing with the 1984–85 school year. The statute requires students to maintain a "70 average" in their course work to be eligible to participate in extracurricular activities. As originally enacted, it applied to all students except the mentally retarded.

On April 25, 1985, plaintiffs filed suit against various defendant school districts asserting the statute was unconstitutional in that it violated equal protection and due process guarantees. The TEA intervened, and the University Interscholastic League (UIL) was brought in by one of the school districts as a third party defendant. The district court held that the statute was unconstitutional and issued a temporary injunction, enjoining its enforcement by defendants. The TEA appealed to the Texas Supreme Court. The supreme court stayed the temporary injunction and set the case for oral argument. On July 10, 1985, the supreme court dissolved the temporary injunction, holding that under the Texas Constitution, a student does not have a fundamental right to participate in extracurricular activities and that the statute did not violate the equal protection or due process protections of the Texas Constitution. *See generally, Spring Branch Indep. School Dist. v. Stamos,* 695 S.W.2d 556 (Tex.1985).

Between the time the supreme court stayed the temporary injunction and the time it issued its opinion, the following occurred: (1) Nolan A., a third grade, learning disabled (dyslexic) student, entered the suit as a party plaintiff, complaining of the Houston Independent School District (HISD)'s enforcement of the statute in the spring of 1985 to exclude him from receiving a trip to Astroworld for perfect school attendance; (2) the legislature amended the statute with a new section "(c)," effective September 1, 1985, which reads as follows:

> (c) Suspension of a handicapped student whose handicap significantly interferes with the student's ability to meet regular academic standards shall be based on the student's failure to meet the requirements of the student's individual edu-

cation plan. The determination of whether a handicap significantly interferes with a student's ability to meet regular academic standards shall be made by the student's admission, review, and dismissal committee....

TEX.EDUC.CODE ANN. § 21.920; and (3) plaintiffs amended their petition in the trial court and before the supreme court to assert the rule violated federal law applying to handicapped persons. Plaintiffs alleged that the statute, as amended, discriminated against plaintiff Nolan A., and the subclass of handicapped students he represented, by violating 20 U.S.C.A. § 1401 (West 1990 & Supp.1991), Education of Handicapped Act (EHA); 34 C.F.R. 300.306 (1990) and 34 C.F.R. 300.553 (1990) (administrative regulations promulgated pursuant to the EHA); 29 U.S.C.A. § 794 (West Supp.1991), the Rehabilitation Act; 42 U.S.C.A. § 1983 (West 1981); the equal protection and due process clauses of the fourteenth amendment of the U.S. Constitution; and the equal protection and due process clauses of the Texas Constitution. Plaintiffs also alleged the statute and rule discriminated against minority students by violating 42 U.S.C. § 2000d et seq. (West 1981), Title VI Civil Rights Act of 1964.

Plaintiffs sought: (1) to have defendants enjoined from enforcing TEX.EDUC.CODE ANN. § 21.920; (2) an order allowing Nolan A. "to compete for said prize in the future without enforcement of the challenged statute;" and (3) the permanent mandatory relief of "a full trip to Astroworld for Nolan A. and the members of the class he represents, i.e. handicapped children, who had a perfect attendance record as of the end of Spring, 1985, but who were denied said prize as a result of the enforcement of Section 21.920, Tex.Educ.Code and 19 TAC 97.113."

In its opinion, the supreme court refused to consider plaintiffs' assertion that the rule discriminated against the "suspect" class of students with learning disabilities, because the person on whose behalf the claim was made (Nolan A.) was not a party to the suit when the trial judge signed the temporary injunction order or at the time the supreme court stayed the injunction

and set the matter for argument. It held that the matter was not properly before it. *Stamos*, 695 S.W.2d at 559. It noted, however, that the legislature had amended the statute addressing the situation of learning disabled and all handicapped students. *Id.* at n. 1. Plaintiffs appealed to the United States Supreme Court.

On October 23, 1985, the trial court certified plaintiffs as representatives for a class consisting of all public school children in the State of Texas and defendants as representatives of a class consisting of all the school districts in Texas.

On December 11, 1985, the trial court appointed a master to collect data from Texas school districts on the impact of the statute on handicapped and minority students' participation in extracurricular activities.

The Supreme Court, on February 24, 1986, in a per curiam opinion, denied plaintiffs' application for writ of certiorari, stating there was no substantial federal question. *Stamos v. Spring Branch Independent School Dist.*, 475 U.S. 1001, 106 S.Ct. 1170, 89 L.Ed.2d 290 (1986).

Dr. Kirby, the Texas Commissioner of Education, testified he had been extensively involved in events leading up to the educational reforms passed by the legislature, including the no pass, no play statute. The legislature created a Select Committee on Education to make recommendations to improve education in Texas. The committee presented the legislature with a plan that resulted in the educational reform legislation. Most of the testimony in opposition to the no pass, no play concept concerned the length of time the student should be suspended from participation. Dr. Kirby gave his professional opinion that the no pass, no play concept was sound educational policy. He testified that weakening the no pass, no play policy would impair the students' ability to pass the competency test that they would be required to take in English, writing, and math to get a high school diploma. He also testified about the requirement that school districts make tutorial time available to

failing students. Dr. Kirby testified that he felt the concept was a strong incentive for the students and their teachers to work harder to see that the students passed so they could participate in extracurricular activities.

Lela A. (Mrs. A.), Nolan's mother, testified that an admissions, review, and dismissal (ARD) committee, composed of the principal, a classroom teacher, resource room teacher, other school district personnel, and a parent, develops an individual education plan (IEP) for each learning disabled student. It contains instructional objectives for the student to meet to assist him in overcoming his learning disabilities.

Following the passage of the amendment to the statute, in the fall semester of 1985, the principal at the HISD school Nolan was attending informed Mrs. A. that failure of a special education subject would not exclude a student from extracurricular activities, but failure of a regular education subject would. In the first six weeks of the 1985 fall semester, Nolan failed language and spelling. Language was a special education subject for Nolan, but spelling was a regular education subject. Mrs. A. was told that because Nolan made below a 70 in spelling, he was excluded from extracurricular activities. She further testified that as a member of the ARD committee, she was unaware of any way grade goals for each six weeks for any subject could be established in the IEP. The ARD committee had not been provided with any criteria to make an objective analysis. At the November 1985 ARD committee meeting, she was given a booklet, "Parent and Student Rights to a Special Education," which is published by the TEA. This booklet tells the parent that decisions regarding the educational program and placement of handicapped students is made by the ARD committee, and that they are part of the committee. As part of the committee, they have a right to be actively involved in its deliberations, to vote on the decisions concerning their child's placement, as well as utilize mediation, to request a due process hearing, and to present a written complaint to the TEA if they disagree with the decisions of the ARD committee or have a complaint about the provision of special education services to the student. The booklet describes the due process hearing procedures for hearings about grievances involving the education of handicapped students. Mrs. A. testified she was aware there were administrative procedures. She testified she had not exhausted them or even commenced them.

When Mrs. A. was recalled to testify in July 1986, she testified that Nolan had maintained another year of perfect attendance, and that through the grace of the school principal, Nolan had gone on the Astroworld trip. Plaintiffs put on no testimony indicating Mrs. A. or any other plaintiff availed themselves of the administrative remedies provided by the EHA.

Mrs. Orr, who holds a Master of Education degree, testified on behalf of plaintiffs. During 1979–80, she was the building chairman for special services at Ed White Elementary, and in that capacity, she wrote and reviewed IEP's and served as a school representative of the ARD committees. She testified that the state and local school districts have not established any written criteria for use by the ARD committees in making their rulings, and that each ARD committee in Texas had almost wholly unfettered discretion in administering the no pass, no play statute. Mrs. Orr testified each ARD committee met only once or twice a year for each handicapped student, and close monitoring of them was impossible because there were so many of them. During the time period of the study conducted by the master, 60% per cent of the handicapped children in the HISD failed one or more subjects, which kills their incentive to participate in extracurricular activities.

Mrs. Orr testified it has been common knowledge that black and Mexican American students have a higher failure rate than whites. Any Texas law or rule utilizing solely earned grades as a prerequisite for entry into and continued participation in beneficial educational endeavors, will disproportionately impact these minority students and increase their drop-out rate. She testified that because of the seasonal na-

ture of many extracurricular activities, the six-week length of the suspension would mean complete exclusion from the extra-curricular activity for the student, and, therefore, the rule would be counter-pro-ductive to its intended purpose. Mrs. Orr authenticated governmental reports intro-duced as exhibits, and agreed with conclu-sions contained in them that minorities should be encouraged to participate in ex-tracurricular activities as a means to im-prove grade performance and reduce their drop-out rate.

On September 30, 1986, the trial court issued its judgment, which did not grant plaintiffs the permanent injunctive relief; however, it assessed the costs of the mas-ter against the State of Texas.

The court made findings of fact and con-clusions of law. Concerning the assess-ment of the cost of the master's fees, the court found "the costs were aggravated by the recalcitrant attitudes of some educators who did not recognize the importance of the information sought and the necessity of their contribution to its validity." The court found that the statute had a "dispro-portionate impact" on minority and learn-ing disabled students, but that "under the evidence the legislature had a legitimate purpose for the passage of the statute." The court concluded it was for the legisla-ture to remedy the inequities [the dispro-portionate impact on minority and handi-capped students] created by the statute. With respect to Nolan A. and the class of handicapped students he represented, the court found and concluded that the issue was moot. The court further found and concluded: "The equitable relief requested would be inappropriate as the Plaintiffs had adequate relief available and elected not to pursue it."

In plaintiffs' second cross-point of error, they contend that the trial court erred in its finding and conclusion that Nolan A. and the class consisting of the certified learn-ing disabled public students were not enti-tled to injunctive relief, as such finding and conclusion was contrary to the relevant law and against "the great weight and prepon-derance of the evidence," as well as against the stipulations [1] and admissions [2] of the State of Texas and defendant school dis-tricts in the state.

■ The TEA argues this point is moot. The TEA's argument is that the legislature eliminated the possibility of the illegal ex-clusion of handicapped students from ex-tracurricular activities by amending the statute to provide that suspension of a handicapped students whose handicap sig-nificantly interferes with the student's abil-ity to meet regular academic standards, be based on the student's failure to meet the requirements of the student's individual ed-ucation plan.

We agree that the amendment of the statute has rendered moot one of plaintiffs' complaints: exclusion of handicapped stu-dents from extracurricular activities through enforcement of the original ver-sion of the statute, which did not take into account the impact of a student's handicap on his academic performance. Since the relief requested by plaintiffs of a trip to Astroworld for Nolan A. and the other handicapped students excluded in the spring of 1985 was based on the enforce-ment of the *original* statute, we agree that the moot status of that issue now renders such relief inappropriate.

We do not agree that the amendment of the statute has rendered moot the issues concerning the application of the amended statute to plaintiffs.

1. Plaintiffs contend, in their brief, that the TEA and the UIL stipulated that the enforcement of the statute would have a negative effect on plaintiffs and that there is no adequate legal remedy available to plaintiffs. An examination of the "Agreed Stipulation of Facts," however, shows that the TEA and the UIL did not agree those statements were true, but rather that if plaintiffs' witnesses testified, the substance of their testimony would be to that effect. One may agree that witnesses would testify a certain

way without agreeing their testimony is true. Thus, the stipulation does not have the binding effect on the TEA that plaintiffs contend.

2. The admissions plaintiffs refer to are the forms collected by the master from Texas school districts showing the statute's dispro-portionate impact on minority and handicapped students.

Texas recognizes an exception to the mootness doctrine referred to as the "capable of repetition yet evading review exception." *General Land Office v. Oxy U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex.1990). It has been applied where the act complained of is one by the government, is challenged on constitutional grounds, is capable of repetition, and is of such short duration that the appellant cannot get review before the issue becomes moot. *Id.*

■ We hold this exception to the mootness doctrine applies to plaintiffs' complaints concerning the schools' administrative action taken under the statute as amended. Here the act complained of, exclusion of a handicapped student from extracurricular activities, is an act by a governmental entity, that is challenged on constitutional grounds, and is for such short duration [usually six weeks] that the student cannot get review before the issue becomes moot. That such exclusion of handicapped students from extracurricular activities is capable of repetition, even after amendment of the statute, is demonstrated in the record by Mrs. A.'s testimony that she was told in the fall of 1985 that Nolan was excluded from extracurricular activities for failing spelling, that Nolan was only permitted to take the Astroworld trip in May 1986 through the grace of Nolan's principal, and that, at that time, she was told by the principal that other learning disabled children in the HISD with perfect attendance [and presumably failing grades] were not allowed to go to Astroworld. We thus conclude the action of which plaintiffs complain is capable of repetition. Therefore, the issue is not moot.

■ We must, however, address another threshold issue—whether this Court has jurisdiction to review the trial court's judgment on plaintiffs' application for injunctive relief, since plaintiffs did not exhaust their administrative remedies.

In its judgment, the trial court concluded, with reference to Nolan A. and the subclass of handicapped students he represented, that: "The equitable relief requested would be inappropriate as the Plaintiffs had adequate relief available and elected not to pursue it." Since the plaintiffs were not seeking monetary damages, and at trial TEA did not contend that plaintiffs could be adequately compensated by monetary damages, we are confident the "adequate relief" to which the trial court was referring was the administrative remedies and safeguards established by the EHA. Thus, we view the trial court's conclusion that plaintiffs had adequate legal relief as a determination that it did not have jurisdiction to decide whether plaintiffs were entitled to the injunctive relief they were seeking because plaintiffs did not exhaust their administrative remedies. *See Christopher v. Portsmouth School Committee,* 877 F.2d 1089, 1093, 1099 (1st Cir.1989).

Section 1415(b)(1)(E) of the United States Code provides that state and local education agencies receiving assistance under the EHA shall establish and maintain procedures to assure that handicapped students and their parents are guaranteed: "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C.A. § 1415(b)(1)(E) (West 1990). The EHA provides that parents who have such a complaint shall have an opportunity for an impartial due process hearing conducted by the state educational agency or by a local education agency as determined by the state. 20 U.S.C.A. § 1415(b)(2). If such a hearing was conducted by a local education agency, a party who feels aggrieved by the agency's decision may appeal the decision to the state education agency. 20 U.S.C.A. § 1415(c) (West 1990). If parents still feel aggrieved after the hearing at the state education agency level, they may then appeal the decision to state or federal court. 20 U.S.C.A. § 1415(e)(2) (West 1990).

The United States Supreme Court in emphasizing the importance of the administrative remedy provided in the EHA said:

When the elaborate and highly specific procedural safeguards embodied in § 1415 are contrasted with the general and somewhat imprecise substantive ad-

monitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, see, e.g., §§ 1415(a)–(d), as it did upon the measurement of the resulting IEP against a substantive standard.

*Board of Education of the Hendrick Hudson Cen. School Dist., Westchester County v. Rowley,* 458 U.S. 176, 205–206, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982); *see also Tatro v. Texas,* 516 F.Supp. 968, 983 (N.D.Tex.1981), *aff'd,* 703 F.2d 823 (5th Cir.1983), *aff'd,* 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984).

However, the Supreme Court has noted that parents may bypass the administrative process where exhaustion would be futile or inadequate. *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988). The party seeking to evade the administrative process though, has the burden to show the futility or inadequacy of administrative review. *Id.* The Court, referenced cases in *Smith v. Robinson,* 468 U.S. 992, 1014, 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984) as situations where courts have held that plaintiffs did not have to exhaust their administrative remedies. In *Monahan v. Nebraska,* 491 F.Supp. 1074, 1086 (D.C.Neb.1980), *aff'd in part and vacated in part,* 645 F.2d 592 (8th Cir.1981), the court held exhaustion of the administrative remedy would be futile in that case because one of the plaintiffs' complaints was that the state administrative remedy itself was at variance with the EHA in that it gave the state commissioner of education the power to review the decision made in the due process hearing, whereas the EHA requires the officer conducting the hearing make an *independent* decision after his review, 20 U.S.C.A. § 1415(c), and that his decision be *final.* 20 U.S.C.A. § 1415(e). In this case, plaintiffs did not complain about the lack of independence of the HISD's or the TEA's hearing examiners or the lack of finality of decisions rendered by the HISD's or the TEA's administrative remedy systems. They just did not use these available and statutorily prescribed administrative remedies.

Another case the Supreme Court referenced, as one where exhaustion of the EHA prescribed remedies was held to be futile or inadequate, was *Howard S. v. Friendswood Independent School District,* 454 F.Supp. 634 (S.D.Tex.1978). In *Howard S.,* when the school district took the action of which the plaintiff's parents, Mr. and Mrs. S., complained (dropping from the school district their minimally brain damaged and learning disabled son, Douglas, during his hospitalization for attempted suicide), Mrs. S. communicated in person and in writing with the FISD's superintendent, assistant principal, and head of special education to advise them she was seeking a suitable educational program for him in the light of his handicaps, and that she wished to participate in an ARD committee meeting to determine if a suitable program could be developed for her son in the FISD. *Id.* at 636. The ARD committee meeting occurred three days later and Mrs. S. was not given an opportunity to be present. *Id.* The ARD committee confirmed the "dismissal" of Douglas. *Id.* A few months later, plaintiffs obtained counsel and requested a due process hearing. The FISD responded by holding a meeting on July 6, 1977, chaired by its retained counsel, in which the designated decision maker was the school superintendent. *Id.* at 636–37. The meeting had none of the indicia of a hearing, such as the formal introduction of evidence, formal presentation of arguments, notice of issues to be decided at the meeting, no impartial hearing examiner, no findings of fact or conclusions of law, and no real decision of any kind rendered at or after the meeting. *Id.* at 637. The court noted plaintiffs had written numerous letters to the TEA to no avail. *Id.* at 638. The court concluded it would have been futile for plaintiffs to take an appeal from the meeting of July 6, 1977, to the FISD Board of Trustees, pointing to the fact that the FISD's counsel was fully aware of and

an active participant in the July 6, 1977, meeting, that the school superintendent and director of special education participated actively in the events after January 1977, and that the Board of Trustees ratified the actions of the school administrators at the time of and after Douglas' expulsion from the FISD. *Id.* In its findings of fact and conclusions of law, the court also stated that at the pertinent times no adequate mechanisms existed to afford the plaintiffs a full administrative hearing. *Id.* at 639.

In this case, Mrs. A. put on no evidence that the HISD board of trustees or any hearing examiner the HISD would provide to hear her complaints had or would ratify the ARD committee's decision to place Nolan in fourth grade, regular education spelling, or the decision of Nolan's principal to exclude Nolan from extracurricular activities during the fall of 1985. Further, in contrast to what the *Howard S.* court found and concluded with respect to lack of an administrative hearing process to afford parents an impartial due process hearing on their complaint, the TEA and the HISD have, since the time of that decision, put in place such a mechanism. *See* Tex.Educ.Agency, 6 Tex.Reg. 4266 (1981). Thus, at the time Mrs. A. had her complaint about Nolan's post-amendment exclusion from extracurricular activities and the lack of objectivity in the ARD committee's determination, administrative remedies were available through the HISD and the TEA, which Mrs. A. did not exercise.

In this case, plaintiffs introduced no evidence to show that if Mrs. A. had gone to the ARD committee, a hearing examiner provided by the HISD, or a hearing examiner provided by the TEA, that such bodies would have, ipso facto, failed to change Nolan's placement for fourth grade spelling from regular to special education or refused to order measures responsive to her complaint of lack of objective criteria for determination of whether Nolan was failing to meet the requirements of his IEP. Plaintiffs put on no evidence that had other handicapped plaintiffs participated in hearings with their local ARD committees, hearings with a hearing examiner provided by their local school district, or hearings before an examiner provided by the TEA, that those bodies would fail to adopt measures concerning objective criteria, tailored to the unique educational needs of each handicapped student, to determine if they were failing to meet the requirements of their respective IEPs, so as to be excluded from participation in extracurricular activities during a grade reporting period following such failure.

The record indicates that Nolan A.'s exclusion from extracurricular activities in the fall of 1985 was because he made below a 70 in regular education spelling. Mrs. A.'s testimony indicates she feels Nolan's dyslexia handicap in reading affects his spelling performance. When asked in November 1985 on cross-examination why she allowed Nolan to be placed in fourth grade regular education spelling, she indicated that she thought his spelling was handled in his special education room, and that she intended to ask the school more questions about it. It is possible that had Mrs. A. called an ARD committee meeting and/or requested the HISD to provide her with a due process hearing to put on evidence to show that Nolan should have been in fourth grade special education spelling instead of fourth grade regular education spelling, the HISD would have agreed with her, effected a change in his placement for that subject, and revoked its suspension of Nolan from extracurricular activities based on an incorrect placement.

Similarly, had Mrs. A. gone through the ARD committee and/or a due process hearing with her complaint about the lack of objective basis for the ARD committee's determination of what subjects a student takes as regular education subjects versus special education subjects, and her complaint about the lack of an objective basis for determining if a student is meeting the requirements of his IEP, it is possible she would have convinced them of the wisdom of her position, and that they would have adopted or modified criteria for making those determinations in Nolan's case that would satisfy her concerns.

In a supplemental brief, plaintiffs assert, under Tex.R.Civ.P. 54, that since they alleged in their petition, on which they went to trial, that all conditions precedent to their cause of action were satisfied, and since the TEA did not specifically deny that pleading, that they were relieved from proving that they had exhausted their administrative remedies. However, when the defense counsel elicited testimony from Mrs. A. that she was aware of the existence of administrative remedies and had not commenced them, plaintiffs' counsel did not object that such line of inquiry or testimony was not supported by the pleadings. These questions constituted issues, the answers to which were important for the trial court's judgment. Where such is the case, the issues will be treated as raised by the pleadings without necessity of amendment, trial having been to the bench alone. *Jacobini v. Zimmerman*, 487 S.W.2d 249, 250 (Tex.Civ.App.—Fort Worth 1972, no writ); Tex.R.Civ.P. 67. Thus, while the state of the pleadings relieved plaintiffs of putting on proof of their exhaustion of administrative remedies as an element of their cause of action, it did not prevent unobjected to evidence on the issue serving as a basis for the trial court's judgment.

Because plaintiffs did not exhaust their administrative remedies as provided under the EHA, we lack jurisdiction, *see Christopher*, 877 F.2d at 1093, 1099, to consider the portion of plaintiffs' appeal based on the ground of violation of the EHA or any of the administrative rules based on the EHA. Likewise, because of plaintiffs' failure to exercise their administrative remedies, we hold we do not have jurisdiction to consider the portion of plaintiffs' appeal based on the fourteenth amendment of the U.S. Constitution or violation of the Rehabilitation Act. *See Smith*, 468 U.S. at 1013, 1019, 104 S.Ct. at 3472.

■ However, as it relates to plaintiffs' claim on behalf of the handicapped, we are still left with the portion of their appeal based on their assertion that the statute, as amended, violates the equal protection and due process provisions of the Texas Consti-

tution. The first determination we must make in equal protection analysis is the appropriate standard of review. *Stamos*, 695 S.W.2d at 559. "When the classification created by a state regulatory scheme neither infringes upon fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest." *Id.* The amendment to the no pass, no play statute addressing the handicapped, Tex. Educ.Code Ann. § 21.920(c), classifies handicapped students based on their achievement of the requirements in their IEP. We hold that those handicapped students who do not meet the requirements of their IEP do not constitute the type of discrete, insular minority necessary to constitute a "suspect class." *See United States v. Carolene Products Co.*, 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938). Therefore, the statute does not burden a suspect class. The Texas Supreme Court has already held that participation in extracurricular activities is not a fundamental right. *Stamos*, 695 S.W.2d at 560. Accordingly, we hold the amendment is not subject to "strict" scrutiny. *See id.* Thus, the proper standard of review is whether the classification is rationally related to a legitimate state interest. We hold that the classification of handicapped students into those who meet the requirements of their IEP and those who do not, for the purpose of determining whether to allow them to participate in extracurricular activities is rationally related to the state's legitimate state interest in providing a quality education to Texas' public school students. The Texas Supreme Court's holding in *Stamos*, that there is not a constitutional right to participate in extracurricular activities, likewise defeats plaintiffs' claim based on violation of substantive due process. *See Stamos* 695 S.W.2d at 556.

Thus, because of plaintiffs' failure to exhaust their administrative remedies, for want of jurisdiction, we do not reach, and, consequently, dismiss the portions of plaintiffs' appeal, contained within point of error two, that are based on the grounds of violation of the EHA and the rules based

thereon, section 504 and the fourteenth amendment of the U.S. Constitution. With respect to the portions of plaintiffs' appeal contained within point of error two that are based on the grounds of violation of the equal protection and due process clauses of the Texas Constitution, we overrule such parts of point of error two.

Next, we consider plaintiffs' third point of error in which they contend the trial court erred in its finding and conclusion that plaintiffs and the class were not entitled to injunctive relief under the protective terms of Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d, et seq. (West 1981) as such finding and conclusion was contrary to the relevant law and was against the great weight of the evidence, as well as against the stipulations and admissions of the State of Texas and the defendant school districts.

The trial court found that the exclusionary provision of the statute had a "disproportionate impact" on minority and learning disabled students. However, the court also found that "under the evidence the legislature had a legitimate purpose for the passage of the statute," and that the "legislature did not give any thought toward race in considering and enacting the statute."

■ In reviewing the legal or factual sufficiency of evidence to support a trial court's findings of fact, we apply the same standard as is applied by a court reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). In reviewing an insufficiency of the evidence point, we consider and weigh all the evidence in the case and, if we find that the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, we set aside the judgment and remand the case for a new trial. *Id.* Because the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), the court of appeals may not substitute its opinion for that of the trier of fact merely because it might have reached a different fact conclusion. *Herbert v. Herbert*, 754 S.W.2d 141, 143–44 (Tex. 1988).

■ The only evidence plaintiffs put on that would contradict the court's finding and conclusion that the legislature enacted the no pass, no play statute for a legitimate purpose and with no thought given to race, was the testimony of Mrs. Orr that it has been common knowledge in the local and state educational systems that black and Mexican American students had higher failure rates than whites. Plaintiffs put on no evidence of minutes of legislative meetings or statements or reports by legislators concerning the passage of the statute, nor did they make an attempt to impeach the veracity of Dr. Kirby's testimony concerning the legislature's motives for passing the statute. Bearing in mind Dr. Kirby's testimony, and that the finder of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, *Rego Co.* at 680, we cannot say that the trial court's findings that: (1) the legislature had a legitimate purpose for passing the no pass, no play statute; and (2) that it did so giving no thought to race, are so against the great weight and preponderance of the evidence as to be manifestly unjust.

We next examine the implication of these fact findings on the validity of the trial court's conclusion of law that plaintiffs were not entitled to injunctive relief under Title VI of the Civil Rights Act of 1964.

■ As a matter of law, the disparate impact analysis applied in a Title VI action is applied in the same way as it is in a Title VII action. *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir.1986). Where the plaintiff has made a prima facie case of discrimination based on disparate impact, it may be rebutted by the entity making the exclusionary decisions by producing some evidence that it had a legitimate, nondiscriminatory reason for the decision. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). If the defendant

meets this burden of production, plaintiffs must prove by a preponderance of all the evidence that the legitimate reasons offered by defendant were a pretext for discrimination. Plaintiffs "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the [excluding entity], or indirectly by showing that the [excluding entity's] proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095.

 Dr. Kirby's testimony about (1) the no pass, no play statute growing out of concerns that extracurricular activities interfered with students' focus on the regular curriculum, and (2) the legislature's concerns about improving the quality of education as a matter of law, had the effect of rebutting plaintiffs' prima facie case of discrimination and putting the burden of persuasion on plaintiffs to prove by a preponderance of the evidence that the legislature's concern for improving the quality of education by giving students an incentive to work harder to pass, was, in reality, a pretext to discriminate against minority and learning disabled students. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. As we have already seen, the only evidence plaintiffs put on that would contribute to accomplishing plaintiffs' burden of proving "pretext" was Mrs. Orr's testimony about the local and state educational systems' knowledge that blacks and Mexican Americans had a higher failure rate than whites. We have already held that in weighing this evidence against all the other evidence, the trial court's finding that the legislature passed the no pass, no play statute for a legitimate purpose was not so against the great weight of the evidence as to be manifestly unjust. Thus, we hold, as a matter of law, because plaintiffs did not carry their burden of showing that the legislature's concern about improving the quality of education through the no pass, no play statute was a pretext for discriminating against minority and learning disabled students, the court did not err in its conclusion of law that plaintiffs were not entitled to injunctive relief under Title VI of the Civil Rights Act of 1964.

Plaintiffs' third cross-point of error is overruled.

In plaintiffs' first cross-point of error, they contend the trial court erred in ruling "it is for the legislature to remedy the inequities created by the statute ...", thus holding that the challenged statutes and rules created solely a "political" problem for the legislature.

Under this cross-point, citing *Edgewood Independent School District v. Kirby,* 777 S.W.2d 391 (Tex.1989), plaintiffs argue that if the legislature enacts a discriminatory statute, it is the Court's duty to say that the legislature has failed to do its constitutional duty and not pass the problem off as a "political" one to avoid deciding the issue. However, we have found under plaintiffs' third cross-point of error that the trial court did not err in holding that plaintiffs failed to prove discrimination. Plaintiffs having failed to establish that the legislature discriminated through the no pass, no play statute, we have no duty to declare the statute unconstitutional.

Plaintiffs' first cross-point of error is overruled.

Plaintiffs contend in their fourth cross-point of error that the trial court erred in not awarding them attorney's fees and expenses because they would be the prevailing parties on appeal. Since we have ruled against plaintiffs, they are not the prevailing parties in this appeal and, therefore, are not entitled to attorney's fees. *See Texas State Teachers Association v. Garland Indep. School Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989).

The TEA asserts in its sole point of error, that the trial court erred by abusing its discretion in taxing the master's fees as a court cost against the State of Texas where all defendants timely objected to appointment of the master, the case was not exceptional, there was no good cause for such appointment, and the state parties were the prevailing parties.

 To preserve a complaint for appellate review, the complaining party must make known to the trial judge his objection and the grounds for the objection, and get

a ruling thereon. *Guzman v. Solis*, 748 S.W.2d 108, 111 (Tex.App.—San Antonio 1988, writ denied). At the time the attorney ad litem moved for the appointment of a master, TEA objected that the attorney ad litem had not submitted an affidavit showing good cause for a continuance under Tex.R.Civ.P. 215. This is not the same as the ground of error TEA now brings before this Court that the case was not an exceptional one and that there was no good cause shown for the appointment of the master. Thus, we hold TEA failed to preserve its point of error for review. Tex. R.App.P. 52(a).

Accordingly, TEA's sole point of error is overruled.

The judgment is affirmed.