TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00671-CV







M. M. Casey, Appellant



v.



Leslie Lenn, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY


NO. 217,784, HONORABLE STEVE RUSSELL, JUDGE PRESIDING







PER CURIAM



 Appellant M. M. Casey challenges a judgment on a promissory note rendered in
favor of appellee Leslie Lenn. Casey incurred the debt to buy out Lenn's interest in a limited
partnership. Casey, who executed the note on December 1, 1982, promised to pay Lenn $15,000
on December 1, 1987 with interest at 10% per year. Casey did not pay the principal on
December 1, 1987, but paid 10% interest in December of 1987, 1988 and 1989; he did not make
an interest payment on December 1, 1990 or any time thereafter. Lenn filed suit on August 12,
1993. The issue on appeal is whether the trial court erred in finding that the parties had agreed
to extend the note so the four-year statute of limitations did not bar collection. We will affirm the
trial court's judgment.

 A person must bring suit no later than four years after the date a cause of action
for debt arises. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3) (West 1986). By points of
error one and two, Casey claims that the trial court erred in concluding that Lenn's claims were
not barred by the statute of limitations because there was either no evidence or insufficient
evidence to support the trial court's findings that the parties agreed to extend the note's maturity
date. 

 In deciding a legal-sufficiency point of error that attempts to overcome an adverse
fact finding as a matter of law, we must first consider only the evidence and inferences tending
to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
If no evidence supports the finding, we must then examine the entire record to see if the contrary
proposition is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690
(Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Texas & N.O. R.R. v. Burden,
203 S.W.2d 522, 528-31 (Tex. 1947). See generally William Powers, Jr. & Jack Ratliff, Another
Look at "No Evidence" and "Insufficient Evidence", 69 Tex. L. Rev. 515, 523 (1991); Michol
O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65, 78-80 (1974).

 An agreement to extend the time of payment must meet all the elements of
a contract to be enforceable.  Sonfield v. Eversole, 416 S.W.2d 458, 460 (Tex. Civ.
App.--Texarkana 1967, writ ref'd n.r.e.). A contract may be express or implied. (1) An implied
contract arises from the conduct of the parties. Haws & Garrett Gen. Contractors, Inc. v. Gorbett
Bros. Welding Co., Inc., 480 S.W.2d 607, 609 (Tex. 1972). The difference between express
contracts and implied contracts is the character and manner of proof required to establish them. 
Id. Mutual agreement is inferred from the circumstances. Id. Whether an implied contract exists
is a question of fact. Id. at 610.

 An agreement to extend the maturity date of a note must be supported by
consideration and the extension must be for a definite time period. Voelker v. Hera, 616 S.W.2d
647, 648 (Tex. Civ. App.--Texarkana 1981, no writ); Maceo v. Doig, 558 S.W.2d 117, 119 (Tex.
Civ. App.--Austin 1977, writ ref'd n.r.e.). The trial court found that the parties agreed to a one-year extension in December of 1987, 1988, and 1989. We conclude that the record supports the
finding.

 Lenn testified that he knew that Casey would have trouble making the principal
payment in 1987 and that he considered each interest payment to have extended the note for
another year. From this testimony, and from Casey's regular interest payments on December 1
of each year, the trial court could have concluded that the parties had agreed to a series of one-year extensions. Casey, relying on Echols v. Professional Financial Associates, Inc., 607 S.W.2d
292 (Tex. Civ. App.--Texarkana 1980, writ ref'd n.r.e.), argues that simply continuing to pay
interest does not extend the maturity date of the note. Echols is distinguishable because the holder
in that case had indisputably refused to renew the note. 607 S.W.2d at 294.

 Moreover, additional evidence supports the trial court's findings. Lenn introduced
copies of letters Casey sent him in December of 1989, 1990, and 1991. Casey's letter enclosed
with his December 1989 payment said, "Please find enclosed a check for interest of the note that
I owe you. As of this date I have not sold any property that I have [sic] received any funds that
could be distributed to you. If the AUSTIN MARKET should ever turn around and real estate
begins to sell, I then can pay your note in full." On November 20, 1990, Casey wrote, "This
letter is to inform you that I am unable to make a [sic] interest payment on your note that is due
on December 1, 1990." (Emphasis added.) And, in 1991, Casey wrote, "This letter is to inform
you that I do not have the cash to pay your interest and note due December 1, 1991." (2) (Emphasis
added.) 

 Casey argues that his letters simply acknowledge interest due on December 1,
rather than a note due on December 1. Although his 1990 letter might be construed to refer only
to interest due, the 1991 letter clearly states that both the "interest and note" is due on December
1. The letters support the trial court's conclusion that the parties had contracted to extend the
maturity date of the note. 

 Lenn further testified that he understood that continued interest payments precluded
him from collecting on the debt. The trial court could have concluded that Lenn's forbearance
from collection, and Casey's continued interest payments, was consideration for each one-year
extension. Maceo, 558 S.W.2d at 119. Considering only the evidence and inferences tending to
support the finding of the trier of fact and disregarding all evidence and inferences to the contrary,
we conclude that the trial court's judgment is supported by some evidence.

 We next consider the factual insufficiency point. The trial court's findings of fact
are reviewable for factual sufficiency of the evidence by the same standards applied in reviewing
the factual sufficiency of the evidence supporting jury findings. Anderson v. City of Seven Points,
806 S.W.2d 791, 794 (Tex. 1991). When reviewing a jury verdict to determine the factual
sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the
judgment only if the evidence standing alone is so weak as to be clearly wrong and manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660,
661 (Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986); Federal Deposit
Ins. Corp. v. Golden Imports, Inc., 859 S.W.2d 635, 640 (Tex. App.--Houston [1st Dist.] 1993,
no writ). See generally Powers & Ratliff, supra. Because the trier of fact is the sole judge of the
credibility of the witnesses and the weight to be given their testimony, the court of appeals may
not substitute its opinion for that of the trier of fact merely because it might have reached a
different fact conclusion. Texas Educ. Agency v. Stamos ex. rel. Class of All Pub. Sch. Children,
817 S.W.2d 378, 388 (Tex. 1991); Herbert v. Herbert, 754 S.W.2d 141, 143-44 (Tex. 1988).

 The only evidence Casey offered to support his assertion that there had been no
extension is two letters sent to Wayne Searcy, another former partner of the limited partnership. 
Casey testified that he would have sent a similar letter to Lenn but Lenn testified that he had never
seen such a letter. The first letter, dated November 15, 1987, reads:



As you are aware, the real estate market in Austin Texas has been in a depression
for the past two years.


I had plans to sell some of my real estate assets to pay you your note in full
December 1, 1987 but as of this date, nothing has sold and probably will not for
another year.


I am enclosing a check in the amount of $1500.00 for interest for period December
1, 1986 thru November 30, 1987. As soon as some of my assets can be sold, I will
forward to you as soon as possible the principal note balance plus interest.



(Emphasis added.) The second letter, dated November 16, 1988, advised:



Enclosed is a check in the amount of $1,500.00 for interest due December 1, 1988
on a note with a balance of $15,000.00 remaining. 


I still have not been able to sell any of my assets to pay this note this year.



(Emphasis added.)

 Casey claims that these letters prove that there was no extension of the maturity
date, but rather that he simply promised to pay the overdue note after he sold assets. He
complains that he promised only to pay when he could or when a particular piece of property sold,
and that those promises are insufficient to support an extension. See Voelker, 616 S.W.2d at 648
(maker's agreement to pay note when able does not create extension for specified time); Sonfield,
416 S.W.2d at 460 (agreement to pay note when certain property becomes marketable does not
fix definite and certain future time for payment sufficient to create valid extension agreement). 


 The letters were not addressed to Leslie Lenn but to Wayne Searcy. The letters
referred to a different note held by a different person. And, although Casey testified that he
"would have" sent the same letter to Lenn, he did not testify that he did. Further, the trial court,
as the sole judge of the witnesses' credibility and the weight to accord it, could have determined
that the letters did not negate the inferences arising from Casey's continued interest payments and
the earlier-described letters to Lenn. Having considered all the evidence, we hold that the
evidence is not so weak as to be clearly wrong and unjust. (3) We overrule points of error one and
two.

 The trial court's judgment is affirmed.


Before Chief Justice Carroll, Justices Powers and Kidd

Affirmed

Filed: August 16, 1995

Do Not Publish
1.   Casey complains that Lenn did not raise the issue of an implied contract and so has
waived this claim. We disagree. Lenn's pleading states, "The parties thereafter agreed on a
yearly basis that maturity of the Note would be delayed upon payment by Defendant of 10%
interest on or before December 1st of each year." The allegation that a contract existed is
specific enough to encompass both express and implied contracts.
2.   The letter also offered Lenn a 9.59% interest in the proceeds of a tract of land, which
Casey promised to reserve for payment of the note. At trial, Casey asserted that he no longer
owed the note because he had assigned an interest proceeds in the debt to Lenn. However, he
had conveyed the property that he assigned the interest in to his children two years before he
offered an interest to Lenn. He testified that he had conveyed the property as part of his estate
planning and that he still controlled the property because, if it sold, his children would give
the proceeds to him. He does not raise the issue on appeal.
3.   Lenn also complained that Casey was estopped from pleading the statute of limitations
because Lenn did not bring suit earlier in reliance on Casey's representations that he would
pay the note. We do not reach this issue because we conclude that there was a valid extension
of the maturity date.